COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E. MOLINA
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

October 11, 2024

Bruce E. Jameson, Esquire
J. Clayton Athey, Esquire
John G. Day, Esquire
Christine N. Chappelear, Esquire
Prickett, Jones & Elliott, P.A.
1310 North King Street
Wilmington, Delaware 19801

Eric A. Veres, Esquire
S. Michael Blochberger, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 1980

Mary S. Thomas, Esquire
Thomas Law LLC
1521 Concord Pike Suite 301
Wilmington, DE 19803

> Re: *Kuramo Capital Management, LLC et. al. v. Nile Capital Management, LLC et. al.*, C.A. No. 2024-0637-SEM

Dear Counsel:

Through this letter, I aim to resolve all pending issues in this action. This is a final report and any exceptions to the rulings herein may be filed under Court of Chancery Rule 144(d)(2). Absent timely exceptions, the parties shall file a proposed implementing order within five business days of this letter.

Interested readers are directed to the docket and my September 24, 2024 post-trial oral ruling for a more detailed background. For purposes of this letter, I provide the following: this is an expedited books-and-records proceeding, through which

Kuramo Capital Management, LLC; Kuramo Africa Opportunity Master Fund II, LP; and Kuramo Africa Opportunity Agribusiness Vehicle, LP (the "Plaintiffs") seek inspection of the books and records of Nile Capital Management, LLC; Nile Global Frontier Fund, LLC; and KN Agri, LLC (the "Defendants," and together with the Plaintiffs, the "Parties"). I presided over trial on a paper record on September 12, 2024, and issued my post-trial ruling telephonically on September 24, 2024. Therein, I found largely in the Plaintiffs' favor; recommending that the Defendants be required to produce records in response to what I defined therein as "Request 2, subject to the existing confidentiality agreement[.]"[1] I rejected, however, the Plaintiffs' request to shift fees under the bad faith exception to the American Rule.

After my ruling, the Plaintiffs inquired about whether I would be "specifically addressing the parties' arguments concerning attorney retainer agreements and litigation funding arrangements[.]"[2] I responded that it was my understanding the Plaintiffs proceeded to trial solely on Request 2, but I invited the Parties to submit written submissions to address any loose ends.

On September 26, 2024, the Plaintiffs submitted a letter explaining their belief that "two issues remain outstanding: whether Plaintiffs are entitled to documents or

---

[1] Docket Item ("D.I.") 40 at 21:20–21.

[2] *Id.* at 22:16–18.

information concerning Defendants' (i) arrangements with litigation funders, and (ii) retainer agreements with their counsel."[3] The Defendants responded in opposition on September 27, 2024, asking me to reject the Plaintiffs' request, which they pitched as a "belated attempt to expand the scope of their written demand through litigation."[4] The Plaintiffs had the last word, on September 30, 2024, advocating through letter that they did not abandon these issues and seek production.[5]

The Plaintiffs are not entitled to documents or information concerning the Defendants' (i) arrangements with litigation funders, and (ii) retainer agreements with their counsel.

First, I remain concerned that the Plaintiffs abandoned these requests in connection with trial. In the pretrial stipulation, the Plaintiffs included these requests in the issues of law and fact that remain to be litigated.[6] But, at trial, the Plaintiffs

---

[3] D.I. 36 at 1.

[4] D.I. 37 at 1.

[5] D.I. 38. The Parties further confirmed, by letter on October 1, 2024, that they understood the exceptions deadline for my post-trial ruling had passed and, thereunder, an implementing order was due by October 1, 2024. D.I. 39 at 1. The Parties proposed, and I agree, that it was premature to submit the proposed order and offered to do so within five business days of my ruling on the remaining issues. *Id.* I welcome that proposal.

[6] D.I. 28, § III(A)(30) ("(f) copies of all engagement letters between any defendant, their affiliates or Seruma on one hand, and the respective law firms who represented them on the other; and (g) documents and information concerning litigation funding arrangements entered into between any defendant, their affiliates or Seruma on one hand, and any individual or organization on the other, which Defendants have not produced.").

walked me through their demand, which contains five requests, explaining: (1) Request 1, which sought either audited or unaudited financial statements, was no longer in dispute based on the Defendants' representation that no such documents existed for inspection or production,[7] (2) Request 2 was "really at the end of the day why" we were at trial;[8] (3) Request 3 had been addressed sufficiently in the Defendants' productions;[9] (4) Request 4, like Request 1, was resolved based on the Defendants' representation that no such documents exist;[10] and (5) Request 5 was answered sufficiently with Request 3.[11]

Later in their presentation, the Plaintiffs touched on the litigation funding and counsel arrangements. They were termed as "smaller[,]" "fairly ancillary issues," which were "follow-ups to information that was provided in the context of this proceeding."[12] The Plaintiffs explained that the existence of such arrangements was disclosed in a June 14, 2024 letter (after this action was filed) and on July 18, the

---

[7] D.I. 34 at 12:5–13 ("[I]f the documents don't exist, then that's it.").

[8] *Id.* at 13:8–13.

[9] *Id.* at 12:22–13 ("It took defendants a couple months to get them to us, but we do have them. That's fine").

[10] *Id.* at 12:14–21 ("[I]f the document doesn't exist, then for purposes of today, we're done.").

[11] *Id.* at 12:22–13: ("It took defendants a couple months to get them to us, but we do have them. That's fine").

[12] *Id.* at 35:5–13.

Defendants promised to provide information by July 23; per the Plaintiffs, to date, the Defendants have failed to provide any further information or documentation.[13]

In the Plaintiffs' presentation at trial, counsel focused on the Defendants' objections to production (confidentiality and privilege). The Plaintiffs failed, however, to make any showing as to the basis for a court-ordered production (*e.g.*, that the requested documents were within the remaining scope of the demand and necessary and essential to the Plaintiffs' proper purposes for inspection). Thus, it is not clear in my mind that these issues were adequately preserved for a post-trial ruling.[14]

But, secondly, and most importantly, these requests fail on their merits. Even if preserved, the Plaintiffs have failed to demonstrate that arrangements with litigation funders and retainer agreements are within the scope of necessary and essential records responsive to Request 2.[15] "As a general rule, . . . inspection rights are limited by the scope of the demand letter, and a . . . plaintiff will be foreclosed

---

[13] *Id.* at 35:8–36:11.

[14] *Cf. In re Est. of DeGroat*, 2020 WL 2088992, at *26 (Del. Ch. Apr. 30, 2020) (deeming a counterclaim waived when the plaintiff "did not present evidence on [it] at trial and only reference[d] the claim briefly in post-trial briefing").

[15] Request 2 seeks "[d]ocuments sufficient to show the assets and liabilities of [the Defendants] at year-end 2021, 2022, 2023, and currently[.]" JX11 at 2.

from recasting the scope of its demand at the eleventh hour."[16] That is precisely what the Plaintiffs aim to do. The Plaintiffs implicitly admit that these records are outside the scope of their demand and hint at their request as some sort of enforcement mechanism for promises made during the Parties' meet and confer. But the Plaintiffs did not seek leave to amend their demand nor have they pled a claim to enforce the purported agreement; the only claim pled, preserved, and presented for my consideration was for inspection under Request 2, of records necessary and essential to the Plaintiffs' proper purposes for inspection.[17] These records are outside of that scope and should not be included in the court-ordered production.

The Plaintiffs' request for arrangements with litigation funders and retainer agreements with their counsel should be denied. This is a final report, exceptions are expedited, and absent timely exceptions, the Parties shall submit a proposed implementing order within five business days.

Respectfully,
/s/ Selena E. Molina
Magistrate in Chancery

---

[16] *Pettry v. Gilead Scis., Inc.*, 2020 WL 6870461, at *27 (Del. Ch. Nov. 24, 2020), *judgment entered*, (Del. Ch. 2020).

[17] *Cf. Apogee Invs., Inc. v. Summit Equities LLC*, 2017 WL 4269013, at *4 (Del. Ch. Sept. 22, 2017) (granting plaintiff's motion for leave to amend its demand under the broad latitude of Court of Chancery Rule 15(a), with no record of undue delay).